IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. 5:14-CR-00055 |
| | ) | |
| v. | ) | |
| | ) | |
| **MARIA ROSALBA ALVARADO** | ) | By: Hon. Michael F. Urbanski |
| **MCTAGUE,** et al. | ) | United States District Judge |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This memorandum opinion accompanies the court's November 25, 2015 order denying defendants' joint motion to dismiss. Defendants Maria Rosalba Alvarado McTague ("Alvarado"), Felix Chujoy ("F. Chujoy"), and Gladys Chujoy ("G. Chujoy") sought dismissal of all charges on grounds of prosecutorial misconduct. ECF No. 280. Defendants allege that the government subpoenaed prospective trial witnesses before the grand jury for the United States District Court for the Western District of Virginia with the dominant purpose of gathering pre-trial discovery in the instant case against Alvarado, F. Chujoy, and G. Chujoy. The court held oral argument on the defendants' motion to dismiss on November 24, 2015. At the hearing, the court noted its intent to file a short order setting forth its ruling on the motion, with a memorandum opinion to follow. The following day, the court entered an order denying the motion, finding no misconduct by the government. ECF No. 287. As promised, this memorandum opinion provides greater detail on the court's reasoning.[1]

---

[1] The court must first address a preliminary question of its jurisdiction in this case. The court entered its order on November 25, 2015. Because trial was then scheduled to begin on December 1, 2015—less than a week after the defendants' motion to dismiss became ripe—the court intended that its order would apprise the parties of the court's ruling so that counsel could prepare for trial, with a memorandum opinion to follow soon after. On November 30, 2015, the government sought interlocutory review of the court's order pursuant to 18 U.S.C. § 3731. The government also sought a stay of this case pending resolution of its appeal. At that time, the court had not yet entered the memorandum opinion. The court nevertheless granted the motion to stay, noting the general rule that a notice of appeal under § 3731 "transfers jurisdiction from the district court to the court of appeals." United States v. Ienco, 126 F.3d

1

# I.

As this case has now been continued four times, the court finds it necessary to discuss its complex procedural history. On December 4, 2014, Alvarado and F. Chujoy were indicted on charges of labor trafficking, visa fraud, and various immigration violations. See Initial Indictment, ECF No. 3. These charges relate to Alvarado and F. Chujoy's operation of the Inca Secret's restaurant in Harrisonburg, Virginia.

After their arrest in December, Alvarado and F. Chujoy were released into the custody of G. Chujoy. The court granted the parties' first joint request for a continuance on January 30, 2015. ECF No. 47. A joint trial on the superseding indictment was then scheduled for June 22, 2015. Subsequent to that continuance, on March 12, 2015, the grand jury returned a superseding indictment against Alvarado, F. Chujoy, and G. Chujoy alleging new charges of obstruction of justice and witness tampering relating to the initial indictment. See Superseding Indictment, ECF No. 52. The government alleges that Alvarado, F. Chujoy, and G. Chujoy contacted various government witnesses between December 2014 and March 2015 in an attempt to influence their testimony at trial.

The weekend before trial was set to begin on Monday, June 22, 2015, counsel for the United States informed the court of a personal matter requiring an emergency continuance of the trial date.

---

1016, 1018 (7th Cir. 1997) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). However, the court believes it retains sufficient jurisdiction to enter this opinion. First, appeals under § 3731 do not require a "wholesale surrender of the trial court's jurisdiction." United States v. Brooks, 145 F.3d 446, 457 (1st Cir. 1998). Further, a district court always retains jurisdiction over matters "in aid of the appeal." Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999) (citing In re Grand Jury Proceedings Under Seal, 947 F.2d 1188, 1190 (4th Cir. 1991)). This opinion is such an aid; it offers the expected explanation for the court's prior order now under review. See Dixon v. Edwards, 290 F.3d 699, 709 n.14 (4th Cir. 2002) (finding that notice of appeal did not deprive the district court of jurisdiction to make a limited modification to a preliminary injunction); Fed. Trade Comm'n v. Enforma Nat. Products, Inc., 362 F.3d 1204, 1215–16 n.11 (9th Cir. 2004) (finding that district court had jurisdiction to enter findings of fact after appeal of the court's preliminary injunction, where those findings helped create a fixed record for the appellate court). This opinion neither amends nor changes the court's prior order, and is instead "entered in furtherance of the [prior] order" with the intent to assist any review of that order. Thomas v. Cnty. of Los Angeles, 978 F.2d 504, 507 (9th Cir. 1992) (finding that district court had jurisdiction to enter written findings of fact and conclusions of law to support preliminary injunction two weeks after the appeal of the injunction). As such, the court believes neither the government's notice of appeal under § 3731 nor the current stay in this case prevents entry of a memorandum opinion explaining the ruling set forth in the court's November 25, 2015 order.

The court granted the government's oral motion to continue and rescheduled the trial for October 26, 2015.  ECF No. 207.  The trial was continued once again on October 23, 2015, for reasons related to the defendants' current claim of prosecutorial misconduct.  ECF No. 268.  Trial was then set to begin on December 1, 2015.

After continuing the case on October 23, the court set a briefing schedule to accommodate any defense motion stemming from the misconduct allegations.  Defendants filed their joint motion to dismiss on November 13, 2015, and the government filed its response on November 23, 2015.  The parties requested oral argument on the motion, which the court held on November 24, 2015.  The court denied the defendants' motion on November 25, 2015, holding that no misconduct had occurred.  ECF No. 287.  However, the court found it appropriate to exclude certain evidence discovered during the challenged grand jury session.  The parties were then directed to prepare for trial on December 1, 2015.

On November 30, 2015, the government filed an interlocutory appeal with the United States Court of Appeals for the Fourth Circuit pursuant to 18 U.S.C. § 3731, seeking review of the court's November 25, 2015 order.  ECF No. 288.  At a previously scheduled hearing held the same afternoon, the government moved to stay prosecution of this case until the Fourth Circuit ruled on its appeal, asserting that its notice of appeal divested this court of jurisdiction.  ECF No. 291.  The court granted the government's motion and stayed this action pending a mandate from the Fourth Circuit.  ECF No. 295.

II.

The facts relevant to the defendants' claim of prosecutorial misconduct are as follows. Between October 6, 2015 and October 20, 2015, the government subpoenaed three witnesses before the grand jury: Carolyn Edlind, Donald Smith, and Special Agent Tami Ketcham of the Department of Homeland Security.  Edlind and Smith were both prospective witnesses in the pending trial on

the superseding indictment, then scheduled to begin October 26, 2015. The same counsel for the United States prosecuting Alvarado, F. Chujoy, and G. Chujoy on the superseding indictment questioned all three witnesses before the October grand jury. Edlind and Smith testified on October 6, 2015. Agent Ketcham then testified on October 20, 2015. That same day, the grand jury returned a new indictment against F. Chujoy and Edlind. See Indictment, ECF No. 1, United States v. Felix Chujoy and Carolyn Edlind, No. 5:15-CR-00029 (W.D. Va. entered Oct. 20, 2015).

This new indictment charges F. Chujoy and Edlind with multiple counts of witness tampering and obstruction of justice, and charges Edlind with perjury. The allegations of witness tampering and obstruction all arise out of the superseding indictment in the instant case. Specifically, the government alleges that F. Chujoy and Edlind contacted prospective trial witnesses in the pending case against Alvarado, F. Chujoy, and G. Chujoy in an attempt to influence their testimony at trial. These new charges are similar to the charges of tampering and obstruction already alleged against Alvarado, F. Chujoy, and G. Chujoy in the superseding indictment.

Following the new indictment on October 20, defense counsel requested copies of the transcripts for the grand jury testimony of Edlind, Smith, and Agent Ketcham in order to review the topics discussed before the grand jury. The government provided complete copies of the relevant transcripts to defense counsel and the court. Review of these transcripts show that the government's questioning of Edlind and Smith on October 6 was both thorough and wide-ranging.

For example, Edlind and Smith were questioned about several jail phone calls and letters they received from F. Chujoy after he was re-arrested in March 2015. They were also questioned about their communications with other prospective trial witnesses. Additional questions explored the operation of the Inca's Secret restaurant, the immigration status of restaurant workers, and information about persons otherwise associated with Alvarado, F. Chujoy, and G. Chujoy. Other

4

questions were directed to potential inconsistencies between Edlind's and Smith's prior statements to government agents and their grand jury testimony on October 6.

The government also questioned Edlind and Smith about their personal interactions with Alvarado, F. Chujoy, and G. Chujoy. These questions were not limited to contact that took place after March 12, the date the superseding indictment was handed down, but also events dating as far back as December 2014, when the initial indictment was returned against Alvarado and F. Chujoy. Some questions went so far as to inquire into conversations between Edlind, Smith, and defense counsel in this case.

In contrast, the testimony of Agent Ketcham was more limited. Agent Ketcham discussed her ongoing investigation of potential witness tampering, and the prior interviews between Edlind, Smith, and other law enforcement officers. Agent Ketcham also provided recordings of the various jail phone calls made by F. Chujoy. Finally, Agent Ketcham testified to a recorded conversation between Edlind and Michael Kwiatkowski, a government witness in the pending trial on the superseding indictment. This contact between Edlind and Kwiatkowski is the basis for the allegation of witness tampering included in the new indictment returned on October 20, 2015.

### III.

Based on their review of the relevant transcripts, defendants insist that the government used the October grand jury session to strengthen its prosecution of Alvarado, F. Chujoy, and G. Chujoy in the instant case. As such, defendants believe the government abused the grand jury process, and request immediate dismissal of the charges in the superseding indictment. Every circuit court to address this issue, including the Fourth Circuit, cites one "universal" rule: prosecutors may not "summon a witness before the grand jury for the sole or dominant purpose of preparing a pending indictment for trial." United States v. Wadlington, 233 F.3d 1067, 1074 (8th Cir. 2000) (internal citations omitted); United States v. Salameh, 152 F.3d 88, 109 (2d Cir. 1998); United States v. Alred,

5

144 F.3d 1405, 1413 (11th Cir. 1998); United States v. Breitkreutz, 977 F.2d 214, 217 (6th Cir. 1992); United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985); In re Grand Jury Proceedings (Johanson), 632 F.2d 1033, 1038 (3d Cir. 1980); United States v. Beasley, 550 F.2d 261, 266 (5th Cir. 1977). Put differently, a prosecutor may not use the grand jury to obtain pre-trial discovery to better prepare for the trial of an already-indicted defendant. United States v. Bros. Constr. Co. of Ohio, 219 F.3d 300, 314 (4th Cir. 2000); Moss, 756 F.2d at 332; United States v. (Under Seal), 714 F.2d 347, 350 (4th Cir. 1983). This includes using a grand jury subpoena with the primary intent to preserve witness statements, gather new evidence, pressure a potential trial witness, or "lock-in" a witness's testimony. United States v. Jackson, 863 F. Supp. 1449, 1454 (D. Kan. 1994).

However, an indictment does not bar the government from making "good-faith inquir[ies]" into other crimes committed by the same defendant, even though that defendant is already under indictment for similar crimes. Bros. Constr. Co., 219 F.3d at 314. Nor does a prior indictment generally prevent the government from using new evidence discovered in a subsequent grand jury investigation to help convict a defendant on charges from the pending indictment. Wadlington, 233 F.3d at 1074; Alred, 144 F.3d at 1412–14. In each case, however, any benefit gained in prosecution of a pending case must be incidental to the government's investigation of new criminal activity. Wadlington, 233 F.3d at 1074; United States v. Foggo, No. 1:08-CR-79, 2008 WL 2777009, at *3 (E.D. Va. July 14, 2008) (noting that the government may "derive an incidental benefit" from subsequent grand jury investigations, so long as the government has a "legitimate purpose" for that investigation).

To prevent abuse of the grand jury process, courts apply the "sole or dominant purpose" test. Where a prosecutor calls witnesses before a grand jury for the sole or dominant purpose of developing new evidence against a defendant already indicted, that prosecutor commits prosecutorial misconduct. Bros. Constr. Co., 219 F.3d at 314. However, a defendant bears the burden to rebut

6

the "presumption of regularity" that attaches to a grand jury's proceedings. Id. This burden is a heavy one.

Even so, courts must conduct a case-by-case analysis to determine if misconduct occurred. United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001); In re Matter of Grand Jury Subpoenas Issued May 3, 1994 for Nash, 858 F. Supp. 132, 135 (D. Ariz. 1994). Relevant factors include the timing of the challenged subpoenas, the topics discussed in grand jury testimony, the government's purpose in calling each witness, and any other evidence "demonstrating an irregularity" in the grand jury process. See, e.g., United States v. Raphael, 786 F. Supp. 355, 358–59 (S.D.N.Y. 1992), aff'd sub nom., United States v. Alegria, 980 F.2d 830 (2d Cir. 1992). The most oft-cited factor, however, is whether the challenged grand jury investigation resulted in a superseding or separate indictment charging new crimes or joining new defendants. If so, courts typically find no misconduct. See United States v. Jinwright, No. 3:09-CR-00067, 2010 WL 99051, at *3–5 (W.D.N.C. Jan. 6, 2010) (finding no misconduct where challenged grand jury session returned a superseding indictment adding new tax charges against the defendant); United States v. Holland, 1:08-CR-00054, 2009 WL 1507146, at *7 (W.D. Va. May 29, 2009) (finding no misconduct where challenged grand jury session returned a superseding indictment with five new charges), aff'd, 417 F. App'x 359 (4th Cir. 2011); United States v. Crosland, 821 F. Supp. 1123, 1127 (E.D. Va. 1993) (refusing to quash grand jury subpoena for financial records relevant to a pending indictment, where the records were also potential evidence of new crimes not yet charged); see also Wadlington, 233 F.3d at 1074 (noting that the challenged grand jury investigation "actually yielded an indictment" against a new defendant); United States v. Austin, No. 97-4197, 2000 WL 32017, at *7 (6th Cir. Jan. 4, 2000) (finding no misconduct where the challenged grand jury investigation returned a superseding indictment with two new defendants and four new counts); United States v. Scott, 784 F.2d 787, 792 (7th Cir. 1986) (finding no misconduct where the challenged grand jury investigation returned a

7

separate indictment against a new defendant); United States v. Dyer, 722 F.2d 174, 179 (5th Cir. 1983) (holding that the defendant's claim of misconduct "cannot survive the finding that the requested information was in connection with a new offense"); United States v. Zarattini, 552 F.2d 753, 757 (7th Cir. 1977) (finding no misconduct where a second grand jury obtained evidence relevant to both a pending indictment and a prior indictment).

Of these courts, the First Circuit has been the most explicit in describing the effect of a new indictment. In United States v. Flemmi, 245 F.3d 24 (1st Cir. 2001), the First Circuit suggested that prosecutors reach a "safe harbor" from claims of misconduct when the grand jury issues new charges or joins new defendants. Id. at 27, 29. This safe harbor "conclusively rebuff[s]" allegations of grand jury abuse. Id. at 29. The First Circuit noted, however, that prosecutors are not protected by the "return of any old superseding indictment." Id. at 30. If, for example, a new indictment "merely corrects peripheral details" or adds "trivial" details to pending charges, no safe harbor is created. Id. But where a new indictment "charges new crimes, adds new defendants, or otherwise works a major change in the prior indictment," it typically cannot be shown that the prosecutor had an improper purpose in continuing the grand jury investigation. Id. The Fourth Circuit has not embraced the "safe harbor" language used in Flemmi, though it recognizes the general rule that joinder of new charges or new defendants is strong evidence that no misconduct occurred. See, e.g., Moss, 756 F.2d at 332.

To be sure, courts caution against mechanical application of the sole or dominant purpose test. Review of potential grand jury abuse must "center on the grand jury's work product" to determine "whether the new matter contained in the later indictment, assayed in a practical commonsense manner, demonstrates that the government's ongoing use of the grand jury was primarily for a proper purpose." Flemmi, 245 F.3d at 29. The mere issuance of a new indictment cannot relieve the court of its obligation to treat seriously any allegation of misconduct in the grand

8

jury process. As one district court in Fourth Circuit has stated, a court's role in such cases is to ensure the "delicate balance" between the government's need to investigate and prosecute crime, on the one hand, and the defendant's right to due process and a vigorous defense on the other. Crosland, 821 F. Supp. at 1125.

## IV.

In their motion to dismiss, defendants claim the government used the October grand jury session to conduct pre-trial discovery to advance its prosecution of Alvarado, F. Chujoy, and G. Chujoy. They focus specifically on the testimony of Edlind and Smith on October 6, arguing that the government used these witnesses to discover new information about defense evidence and trial strategy for the pending trial on the superseding indictment. Defendants also cry foul at the issuance of a new indictment against F. Chujoy and Edlind on October 20, 2015, less than a week before the then-scheduled trial on the superseding indictment. Defendants claim this new indictment chilled potential defense witnesses—including the now-indicted Edlind—who were otherwise scheduled to testify at trial.

For its part, the government claims that the October grand jury session was investigating allegations that F. Chujoy—then under indictment in the instant case on charges of labor trafficking, harboring, obstruction of justice, and witness tampering—committed additional acts of witness tampering and obstruction after the grand jury returned the superseding indictment on March 12, 2015. In support, the government relies heavily on the new indictment returned on October 20, 2015, which alleges new charges against both F. Chujoy and Edlind. As such, the government argues the defendants cannot carry their burden to show abuse of the grand jury process. The court agrees, and therefore denies the motion to dismiss.

The test is one of sole or dominant purpose. Plainly, one purpose of the October 2015 grand jury session was to investigate new allegations of witness tampering and obstruction of justice.

9

Indeed, the grand jury returned a new indictment on October 20 charging F. Chujoy with witness tampering and obstruction and Edlind with witness tampering, obstruction, and perjury. Thus, it cannot be said that the government's sole purpose was to conduct pre-trial discovery.

The government's dominant purpose during the October 2015 grand jury session is a more difficult question, though the court ultimately concludes that the government's examination of Edlind and Smith did not go so far as to constitute misconduct. As the government notes, an investigation of witness tampering and obstruction is difficult to segregate from the underlying case in which the tampering occurred. As such, questions that touched on Edlind's and Smith's prior contact with Alvarado, F. Chujoy, and G. Chujoy have a credible relationship with the new allegations of witness tampering. In addition, Edlind and Smith made statements during their grand jury testimony that were allegedly inconsistent with prior statements made to law enforcement. The pending superseding indictment did not prevent the government from exploring inconsistent statements offered by a witness under oath.

At the same time, review of the grand jury transcripts reveal lines of inquiry by the government that seem to stray far afield of the new allegations of witness tampering, obstruction, and perjury. Many pages of questions were asked about the operation of the Inca's Secret restaurant, the immigration status of individuals who worked there, and other persons associated with the defendants—topics highly relevant to the underlying charges of labor trafficking, visa fraud, and immigration violations. Moreover, much of Edlind's and Smith's testimony dealt with events that occurred between December 2014, when the grand jury returned the initial indictment, and March 2015, when the grand jury returned the superseding indictment. Since the government's stated purpose for the October grand jury session was to investigate witness tampering that occurred after the superseding indictment was returned in March 2015, <u>see</u> Resp. to Mot. for Grand Jury Tr.,

10

Case 5:14-cr-00055-MFU   Document 317   Filed 12/10/15   Page 10 of 16   Pageid#: 2551

ECF No. 264, at ¶ 5, defendants claim it was improper for the government to ask questions about conduct occurring prior to that date.

The court recognizes that the government had broad suspicions about previously-unknown acts of witness tampering committed by F. Chujoy. The court also takes seriously any allegation that a defendant sought to obstruct this court's proceedings. However, the broad scope of the government's questioning on October 6 gave defendants concern that the government's purpose was to probe the underlying charges, both to obtain evidence for its case-in-chief and for potential impeachment, as well as to chill defense witnesses.[2]

Of particular concern to the court are the questions about prior conversations between Edlind, Smith, and defense counsel in this case. Specifically, the government questioned Edlind about a conversation with Aaron Cook, counsel for F. Chujoy, and William Eldridge, then-counsel for Alvarado. This conversation involved advice Alvarado received from her accountant, advice that defendants claim is a potential defense to certain charges from the superseding indictment. On their face, such questions seem clearly out of bounds.

Such concerns are compounded by the timing of the October grand jury session. See United States v. Wadlington, 233 F.3d 1067, 1074 (8th Cir. 2000) (finding that timing of a grand jury session begun twenty days before trial was "somewhat suspect"); In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels), 767 F.2d 26, 29 (2d Cir. 1985) ("The timing of the subpoena casts significant light on its purposes."). Edlind and Smith were subpoenaed to testify on October 6, less than three weeks before trial on the superseding indictment. The new indictment against Edlind and F. Chujoy was then returned on October 20, a mere week before trial. Had this testimony occurred

---

[2] The analysis is further complicated by the similar charges of witness tampering and obstruction already included in the superseding indictment from March 12, 2015. Obviously, the government was barred from using the grand jury for the sole or dominant purpose of gathering evidence on these prior charges. It was free, however, to investigate any previously-unknown allegations of witness tampering or obstruction not yet charged. Any attempt to evaluate the purpose of a particular line of inquiry by the government must navigate this tangled web of related charges from the superseding indictment and the new indictment from October 20, 2015.

11

months prior, defendants' fears of grand jury abuse may well have been assuaged.

In the court's judgment, however, these various concerns are not so great as to overcome the "presumption of regularity" it must afford the October grand jury session. United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) (quoting United States v. Woods, 544 F.2d 242, 250 (6th Cir. 1976)). The grand jury is charged with gathering "all information that might possibly bear on its investigation . . . until it has identified an offense or has satisfied itself that none has occurred." United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991). In this case, the government represents that its dominant purpose in questioning Edlind and Smith was to investigate new allegations of criminal conduct, not to conduct pre-trial discovery. This representation is aided, in no small part, by the fact that the grand jury returned a new indictment against both F. Chujoy and Edlind. As multiple courts have found, return of a new indictment is strong evidence that the government did not abuse the grand jury process. See, e.g., United States v. Jinwright, No. 3:09-CR-00067, 2010 WL 99051, at *3–5 (W.D.N.C. Jan. 6, 2010) (finding no misconduct where challenged grand jury session returned an indictment with new charges); United States v. Holland, 1:08-CR-00054, 2009 WL 1507146, at *7 (W.D. Va. May 29, 2009) (same), aff'd, 417 F. App'x 359 (4th Cir. 2011). Therefore, despite the concerns noted above, the court finds that the defendants cannot carry their burden to show that the government questioned Edlind and Smith with the sole or dominant purpose of preparing for trial on the superseding indictment.

## V.

The court nevertheless finds it necessary to fashion an appropriate evidentiary remedy. The government opposes any evidentiary restriction in the absence of a finding of misconduct. See Brief in Opp'n, ECF No. 282, at 29–30. In its view, "where there is no misconduct, there is no sanction." Id. This position reflects the general rule that the government may use new evidence discovered in a subsequent grand jury investigation to help convict a defendant on pending charges, provided the

subsequent investigation was conducted in good faith.  United States v. Wadlington, 233 F.3d 1067, 1074 (8th Cir. 2000); United States v. Alred, 144 F.3d 1405, 1413 (11th Cir. 1998).  However, the circumstances and timing of the new grand jury investigation and other delays associated with the prosecution of this case persuade the court that some evidentiary restriction is needed.

First, as noted in Part IV of this opinion, a not-insignificant portion of the questions asked at the October grand jury session went beyond the subject of witness tampering and obstruction, and delved into information probative to the underlying charges.  Unlike in Wadlington, Alred, and other cases to adopt the general rule, the government in this case explored multiple lines of inquiry that probed topics squarely relevant to the pending indictment.  These inquiries—while not so egregious as to justify a finding of misconduct—appear to go beyond providing mere background or context for an investigation of new offenses.  Again, questions asked about conversations between the witnesses and defense counsel are of particular concern.  Because so many of the government's questions addressed issues closely intertwined with the underlying charges, including a potential trial defense, some evidentiary restriction is needed to ameliorate concerns that the defendants' trial strategy was exposed during the October grand jury session.

In so finding, the court notes that at least one district court in the Fourth Circuit has taken a similar approach.  In United States v. Brothers Construction Co. of Ohio, 219 F.3d 300 (4th Cir. 2000), the district court addressed claims of prosecutorial misconduct similar to those found here.[3]  In that case, the government re-called several witness before the grand jury after an indictment had already been returned in the underlying case.  Id. at 313.  The defendants objected, claiming that the government used the grand jury to strengthen its case on the underlying charges.  Id. at 313–14.  In

---

[3] The district court in Brothers Construction Co. addressed the issue of prosecutorial misconduct at multiple points before, during, and after trial.  This court was unable to locate an original copy of the district court's decision.  Therefore, it relies on the record of the district court's decision as compiled in the Joint Appendix prepared for the appeal of that case and as described by the Fourth Circuit in its opinion.  Citations to both the Joint Appendix and the Fourth Circuit opinion are provided where necessary.

13

response, the government cited its ongoing investigation of related criminal activity, including allegations that a potential trial witness committed perjury. Id. at 314. Based on this representation, the district court found no misconduct and denied the defendants' motion to dismiss. Id.

The district court nevertheless found it necessary to exclude certain evidence at trial. For example, it prevented the government from calling at least one witness in its case-in-chief, finding that his post-indictment grand jury testimony "seemed to impart some things that may very well be considered discovery." Id. at 314 n.5; see also Joint Appendix, Vol. I, at 338–43, United States v. Bros. Constr. Co. of Ohio (4th Cir. filed Feb. 16, 1999) (No. 98-4613(L)) (excluding testimony of Fred Donato). Two other witnesses were permitted to testify, but the district court barred the government from impeaching them with their post-indictment grand jury testimony or from examining them about such testimony. Bros. Constr. Co., 219 F.3d at 314; Joint Appendix at 475B–478, 901 (discussing testimony of Dale Russell and Chuck Taylor); cf. United States v. Moss, 756 F.2d 329, 331 (4th Cir. 1985) (noting, without elaboration, that transcripts from the challenged grand jury session were not used during trial). While the district court's evidentiary rulings in Brothers Construction Co. were not directly reviewed by the Fourth Circuit on appeal, this court finds them instructive.

The need for some evidentiary remedy is further supported by the ongoing delay in this case. On two occasions, defendants prepared for trial on the superseding indictment, only to see it continued at the eleventh hour. First, the case was continued on the government's emergency motion the weekend before the June 22, 2015 trial date. See ECF No. 207. Then, less than a week before the October 26, 2015 trial date, the case was continued again on motion of the defendants because of the new indictment returned against F. Chujoy and Edlind on October 20, 2015. See ECF No. 268.

14

In granting the government's motion for a continuance in June, the court did not expect that the government would undertake to develop additional evidence for use at trial. The June continuance was granted only to ensure continuity of counsel in the face of unexpected personal issues affecting counsel for the United States. This continuance not only required further delay in resolving this case but also forced one defendant, Maria Alvarado, to obtain new counsel when her prior counsel became unavailable to represent her. Given this unique combination of circumstances, the court finds it fundamentally unfair to allow the government unfettered use of this late-breaking and wide-ranging grand jury testimony without an appropriate evidentiary limitation.

For these two reasons, the court excludes at trial Edlind's and Smith's grand jury testimony from October 6, 2015. The government may not call Edlind or Smith to testify in its case-in-chief as to subjects covered in their October 6, 2015 grand jury testimony. In the event the defense calls Edlind or Smith to testify, the government may not impeach them with their grand jury testimony from October 6, nor may they examine them about such testimony.

In so ruling, the court intends that the government may still call Edlind and Smith to testify about evidence not covered in their October 6, 2015 testimony before the grand jury. So too may the government cross examine Edlind or Smith with materials other than the transcripts of their testimony on October 6. The government has also noted its intent to introduce evidence related to the new indictment against F. Chujoy and Edlind at trial on the superseding indictment. See Notice of Intent, ECF No. 257. The court has not yet ruled on objections to that evidence, and the admissibility of any evidence pursuant to Rule 404(b) of the Federal Rules of Evidence will be determined when that motion is once again before the court.

## VI.

For the reasons stated above and in the accompanying order from November 25, 2015 (ECF No. 287), the court finds that the government committed no misconduct during the October 6,

15

2015 session of the grand jury. After consideration of the circumstances and timing of the October grand jury session and other delays associated with the prosecution of this case, however, the court finds it necessary to limit the government's use of the newly developed grand jury testimony. As stated in its prior order, the court therefore rules as follows:

1. The defendants' motion to dismiss, ECF No. 280, is **DENIED**.

2. The government may not call Edlind or Smith to testify at trial in its case-in-chief as to subjects covered in their October 6, 2015 grand jury testimony.

3. The government may not use at trial, for any purpose, Edlind's or Smith's grand jury testimony from October 6, 2015. Should Edlind or Smith be called to testify on behalf of the defendants, the government may not impeach either witness with their October 6, 2015 grand jury testimony, nor may it examine them about such testimony.

Entered: December 10, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge